case today is case number 417-05-46. The people of the state of Illinois versus Josiah Porter. We'll show the appellant present by counsel, Ms. Kemp, and the appellee present by counsel, Ms. McClain. You may proceed, counsel. You may proceed to the court, counsel. My name is Amy Kemp. I work at the Office of the State Appellate Defender, and I represent the appellant, Josiah Daniel Porter. This case presents issues of both plea withdrawal and excessive sentencing. The defense will focus today on the plea withdrawal issue. There are two independent grounds for plea withdrawal in this case, ineffective assistance of counsel and a defense worthy of consideration at trial. I will begin with ineffective assistance of counsel. There's no question that Josiah was constitutionally entitled to the effective assistance of counsel at the plea stage. There's no question that defense counsel provided, at best, grossly incompetent representation at the plea stage. At the plea stage or before the plea? Both, Your Honor. I'll make sure I'm clear. You're saying that by the time he entered his plea of guilty, he did not know that he was pleading to two counts of criminal sexual assault? No, Your Honor. I'm not saying that he did not know that he was pleading guilty to two counts. I believe he did know he was pleading guilty to three counts. And he had time to talk with his lawyer, right? No. The record shows that there were hurried hallway consultations. Where does it say that? In the affidavits. Did anybody put a time frame on them? No, a particular time frame is here in the affidavits. And it wasn't a day for trial. In fact, it was specifically set by defense counsel for plea, right? It was set by defense counsel and ASA Alfred for plea, yes. In fact, the case wasn't even ready for trial because this attorney had fairly recently come into the case, hadn't he? No, Your Honor. There was a pending motion to suppress, is that right? There was a pending motion to suppress, a motion for substitution of the judge that had just been granted in the end of May of 2016. So his options at that point would have been plead, don't plead, and proceed to trial at a later date, or move to continue to have either more time to consider the plea or to engage in further negotiations. He wasn't going to go to trial that day. That's correct. You bring up a very important point by noting the option of taking some time to think about the new position that he found himself in. It's that ASA Alfred led him to believe that he had that, that that option was not an option. ASA Alfred led him to believe that he had to either plead guilty then and there at that 9 a.m. hearing or commit irrevocably to trial. That is, of course, legally false. Is that what she said? In discussions with defense counsel in the hallway within earshot of Josiah and his parents, ASA Alfred said that she would, quote, not, she was not going to drag the complaint back and forth, and that Josiah had to then enter and plead guilty to both options and proceed to trial, thereby creating a false dilemma in Josiah's mind. Defense counsel did not correct that false dilemma. Wait a minute. What was the false dilemma? The state doesn't have the right to say, here's the offer. If you don't take this offer, then this is what we're going to do. Your Honor, there was no offer. It was a completely open plea with no sentencing concession by the state. Josiah pleaded guilty exactly as charged with no sentencing concession. He had a right to do that at any point. He was present with his lawyer, his parents. And, in fact, he engaged in negotiations with Frostbeard himself, didn't he? I believe that negotiations would be kind of a stretch. Well, he said, can't I still plead to one count of aggravated criminal sexual assault? And she said, no. And he said, okay, I'm going to plead guilty, and I hope that the trial court sees that I'm accepting responsibility. He essentially asked A.J. Albright for the plea deal his defense counsel had told him he had. He had about a month between the time where defense counsel induced reliance on a nonexistent plea offer and that plea date where he thought, I'm going to plead guilty to one count. And he thought that because he was told that by defense counsel. Which, by the time of the plea, he knew was not the case. Absolutely, Your Honor. The state would have you focus on just that misinformation deficiency. But the deficiency goes far beyond misinformation to induction of reliance on a nonexistent plea offer. I'm having a fleeting induction. I don't understand. It's causal, Your Honor. If you look at the U.S. Supreme Court case of Lee from 2017, the standard for prejudice here is proof of a reasonable probability that but for defense counsel's deficiency, the defendant would not have pleaded guilty, but for. It's causal. We see a reasonable probability that defense counsel's deficiency here led Josiah to plead guilty where he otherwise would have proceeded to trial. We have contemporaneous evidence. He didn't plead guilty under the mistaken belief that he was pleading to one count. By the time of the plea, he was clearly informed in the presence of his parents that he was pleading to two counts. Yes. And he's the one who said, OK, I'm pleading guilty. In fact, he tells the prosecutor directly, I'm going to plead guilty. And I hope that the court takes into account that I'm accepting the responsibility. That is absolutely correct, Your Honor. That is the misinformation deficiency that was corrected by the time Josiah pleaded guilty. But the induction deficiency was not corrected. In other words, the very reason why Josiah was in court that day is because defense counsel had persuaded him to take a plea deal that did not exist, scheduled the court date, driven him some 120 miles from Homewood in the greater Chicago metro area to the courtroom in Bloomington. His parents separately drove. The record indicates that the complainant was there as well. So he's surrounded by people who are expecting him to plead guilty because of what defense counsel did. But counsel, the problem seems to be when we look at the admonishments that the trial court gave your client, those admonishments that we're all familiar with, has anyone forced you to plead guilty? Is this what you want to do? This is what you're pleading guilty to? It's difficult to understand why those admonishments did not cure the situation here. I mean, obviously, we have some, at least it appears to be, unethical behavior on behalf of his attorney telling him that this is the agreement when there is no such agreement. Very troubling. Absolutely. But when he realizes that there is no plea deal to that extent, and he realizes that this is what I'm pleading guilty to, and the judge is asking, has anyone forced you to do this? Do you want to do this? And he's responding, yes, I want to plead guilty. I understand what I'm pleading guilty to. No one has forced me. How does that not overcome what happened prior to that? Your Honor, Rule 402 admonitions only cure deficient representation of counsel if they are sufficiently related to the deficiency. Here, I believe the Rule 402 admonitions were sufficiently related to the misinformation deficiency. In other words, defense counsel misinformed him about the particulars of the guilty plea he ultimately entered. But here, the deficiency goes so far beyond the ordinary misinformation deficiency where defense counsel works out a plea deal with the prosecutor, perhaps misinformed the defendant as to some component of that plea deal. The Rule 402 admonitions correctly inform the defendant of the consequences of his plea, thereby curing the deficiency. In this case, because there was no plea deal at all, because defense counsel led Josiah to believe that there was a plea deal and changed the complete course of what Josiah was doing, he was on a trial track. The record shows, in March of 2016, both ASA Al Green and defense counsel represented to the trial court that negotiations had broken down, they had been unsuccessful, and that, quote, this will be a trial. Josiah began efforts to suppress the evidence, access missing police records, and get a different judge assigned to the case to prepare for trial. This was all going on that spring. And then the trial track that Josiah was on was derailed by defense counsel, by enticing him to go to court under the false pretense of a different deal, a deal. Is that what you're saying? Yes, and that error was compounded by the additional facts of driving Josiah to court, especially by allowing Josiah to believe that he either had to plead guilty then and there or never. The defense lawyer himself said that he was mistaken. You talk about an inducement, but the lawyer said he was mistaken. He thought there was an agreement when there wasn't. Was there evidence in the record that, no, he actually knew there wasn't such a deal, but this was all some sort of made-up subterfuge that he created? No, Your Honor, but whether defense counsel made some sort of mistake in his own mind as opposed to intentionally misrepresenting the situation, it doesn't matter for purposes of our inquiry. Well, that's the kind of language you're using is that he's purposely sinister, with some sort of sinister intent, inducing him to do something that he knows isn't right when, in fact, the lawyer was mistaken, and everybody seemed to accept that. I don't think that induction necessarily involves bad faith. It's a causal inquiry, but for defense counsels, whether it was a mistake or whether it was bad faith, but for what defense counsel did and didn't do, Josiah would not have pleaded guilty. This was retained counsel. That's correct. He previously had the public defender. Your Honor, I don't recall that as being a fact in this case. I know that defense counsel Reese was retained very early in this process. And then was he the last counsel he had? Through post-plea proceedings, defense counsel Reese did file a motion to reconsider a sentence, and while that motion was still pending, Josiah terminated the representation and retained new counsel, Mr. Patel, who filed an amended motion to reconsider a sentence and filed a motion to withdraw. So the plea immediately followed defense counsel's feet and switched, and ASA Alfred's You're putting a sinister intent when, in fact, there's no evidence of any other than a mistake by the lawyer. Your Honor, please set aside that language then. The term bait and switch is not an innocent error by someone. It's an intentional misrepresentation, isn't it? Whether it was an intentional misrepresentation or an innocent mistake, it's quite the mistake. But whether it was an innocent mistake Well, but you keep using this language just as the airman's point. Bait and switch is not just a miscommunication or misunderstanding. Bait and switch is when someone is defrauding someone, isn't it? I think that the idiom could be used in different ways. You might grab a worm when you meant to grab a fly. Okay. This ineffective assistance of counsel rendered Josiah's plea unknowing and involuntary and not withstandable for two admonitions. If there are no further questions on the ineffective assistance of counsel issue, I would like to turn to the defense worthy of consideration at trial issue.  A defense worthy of consideration is a defense that has enough merit that it ought to be heard by a fact finder. Counsel, wasn't this defense available to your client all along? It seems like it's more an issue of we didn't think she would be such a bad witness versus we have a defense that should be heard. Certainly, Josiah could have attempted a consent defense prior to his knowledge that the complainant would undermine her own credibility through testimony. So the defense wasn't wholly unavailable to him prior to that testimony. Realistically, what other defense was he going to give? He'd already told the police that he had sex with her and they had his DNA. So consent's pretty much what you're left with, right? I think that's fair. The consent defense was an option that he did not pursue. But the cases don't indicate that the defense had to be unknown or wholly unavailable to the defendant in order for it to be grounds for plea withdrawal. The best case on this issue is Mercado. In that case, which was also a criminal sexual assault case with an adult complainant. The state's case hinged on the complainant's credibility. The defendant believed that the complainant would testify consistent with her accusation of penetration by force. And so he pleaded guilty. Subsequently, the complainant alerted that she consented to the penetration. She recanted her testimony. Well, there was no testimony. But her statement. She filed an act where she notarized her affidavit. She recanted her statement. That's a lot different than having credibility issues. Actually, Your Honor, the way the court articulates the impact of the affidavit does not focus on the significance of recantation as such. The court focuses on the impact on the victim's credibility. If I could quote briefly, the court says, The affidavit raised questions about the complainant's credibility such that the defendant must be afforded an opportunity at trial to test the credibility of the complainant. So the court wasn't hanging its hat on a complete recantation. The court instead noted the impact of a recantation on accusations. And we have quite a similar situation in this case where the state's case against Joe Sida did hinge on the complainant's testimony, on her credibility. And she undermined her credibility inextricably during her defendant Collins' jury trial. She acknowledged that at least until her boss, Breanna Hart, called 911, her primary motivation was to keep her parents from knowing what she had done that night. At any point did she indicate that she consented? There were points in her testimony where certain incidents of penetration Well, I'm referring to Mercado, what you just discussed with us and how the victim in that case, alleged victim, recanted and said, I consented. Did we have anything along those lines like that in this case? I believe so, Your Honor. What were those statements? There were statements as to penetration that took place between Joe Sida and the complainant that she referred to as being, I believe, regular sex, is the quote. I don't have that in my notes. I can certainly follow up on rebuttal with that. In addition, there's a point during her testimony where she acknowledges a sexual encounter, and I know that that is the quote. And she acknowledges that she got in over her head that night. I think, crucially, she admitted over and over that she lied. She admitted that she never made the statement that I consented to this. No, on the stand, no, she didn't say, I consented to all the penetration that took place. That did not happen. But she did admit lies to Hart, lies to the 911 operator, lies to Whitaker, the child advocacy center, lies to police. She admitted that she lied to make herself look better and to make the boys look worse. She fully undermined her credibility. And Josiah should have an opportunity, as the defendant in Mercado, to test her credibility at a trial. In conclusion, the trial court committed reversible error in denying Josiah's motion to withdraw. Because he was denied his constitutional right to effective assistance of counsel at the plea stage, and because he had a defense worthy of consideration. What's the standard of review on this? Abuse of discretion, is the standard of review on this issue. So we'd have to conclude that no reasonable court could deny this motion? I believe it would be an abuse of discretion under the cases of... Isn't an abuse of discretion mean no reasonable court in the position of the trial court could have denied the motion to withdraw the guilty plea? That would be the kind of canned standard here, where you have a plea that was the result of ineffective assistance of counsel. It is definitely an abuse of discretion to deny withdrawal of that plea. Withdrawal of a plea that results from ineffective assistance of counsel is required. We also have the Illinois Supreme Court's statement that judicial discretion on plea withdrawal should always be exercised in favor of innocence and liberty, and in the light of the preference that is shown by law for a trial upon the merits. And that is what Josiah seeks here. We respectfully request that this court reverse the trial court's denial of his motion to withdraw, vacate his convictions and sentence, and remand for further proceedings. Thank you, counsel. Ms. McLean? I thank this court, counsel. The state maintains that the trial court denied abuse of discretion and denied defendant's motion to withdraw his guilty plea. The plea admonitions in this case corrupted any misinformation made by defense counsel such that defendant was not prejudiced. The plea admonitions were sufficiently related to the misinformation given. The court told defendant repeatedly that he was pleading to two charges, not one. As for whether there was a plea agreement or not, the fact that there was no agreement was cleared up before the plea hearing, and then by the time of the plea hearing, after the prosecutor and defense counsel and the parents had talked to defendant, and defense counsel and defendant had also had two separate meetings prior to the plea hearing, by the time of the plea hearing, defendant had agreed to plead to an open plea, so there was an agreement. During the plea hearing, the court's admonishments were sufficiently related to the deficiency. Defendant acknowledged he understood he was entering an open or blind plea to the two charges with no specific agreement as to sentence. The court determined that defendant had not been honest in anything to plead guilty, and the court found the plea had been entered into understandingly and voluntarily. Counsel, opposing counsel says that the problem here is the prosecutor gave her client the impression that he had to either plead guilty that day or go to trial. Of course, we all know if he wanted to open plea, he could do that at any time. How does that impact the analysis? In this case, defendant decided to plead at this time because he thought it would show responsibility to the judge and that he might get a more lenient sentence. So he decided to go ahead at this time rather than put it off because he thought he might have shown favor to the judge. So the prosecutor's misrepresentation, because that's not true, that you have to plead today or go to trial, that has no impact on the voluntariness of his plea? I don't believe it does. I think that the prosecutor can say, I don't want to drag the victim down and have her come back to trial as a victim of abuse, and I don't want to do that. So you either plead or you go to trial. You can always go to trial. So this is the prosecutor basically saying either you plead today or we're not going to negotiate, we're just going to go to trial on this case. I think the prosecutor has that right. In this case, you look at the defendant's decision-making to see whether he was prejudiced by his counsel's alleged deficient performance. And according to the prosecutor's affidavit, the defendant's decision to plead guilty involved – he gave his reason for accepting the guilty plea. According to the prosecutor's affidavit, the defendant stated he was pleading guilty hoping the court saw he was taking responsibility for the crime and gave him a more lenient sentence. And although he had filed a motion to suppress, the state had filed an answer to that motion and it was without merit because the police entered the apartment under exigent circumstances because there was another victim involved still being assaulted. And also the defense counsel's motion to suppress did not identify any evidence to suppress. So before he pled, he knew the motion to suppress was without merit. Further, he had just gotten a motion for substitution of judge, so he would be pleading before a new judge who had not heard any evidence and was not prejudiced. And also, he knew before trial that the strength of the case, his DNA was on the victim's neck. A penal swab of the defendant suggested that a profile would not exclude the victim. The defendant had admitted involvement in a statement to police and co-defendant Yates pled guilty to a lesser charge in exchange for his cooperation against the defendant and Collins. Most likely, Yates would have testified to the defendant's charge. By pleading guilty, he avoided having the prosecutor inform the judge of all the evidence available to establish the defendant's guilt. So defendant properly advised, Collins would not have opted to go to trial in this case. As for whether the defendant has a defense worthy of consideration, defendant's guilty plea constituted a judicial admission of the fact alleged in the indictment. Because a judicial admission operates as a waiver of proof of a factual issue, defendant should be stopped by his waiver from contesting the fact that he used force or threat of force on the victim. A judicial admission is a deliberate, clear, untold statement of a party about a concrete fact within the party's particular knowledge. In this case, whether he used or threatened force was a fact within the defendant's particular knowledge, and the state should be entitled to hold the defendant's judicial admission and use force or threat of force. In the Mercado case, in service of the Temptation, the case is not in the Temptation. Defendant could have challenged the victim's credibility at trial, even before the victim testified at Coe Defendant's trial in February of 2017. Defendant was aware of the victim's credibility problems. According to her statements to the police, she lied to her parents about where she was staying. She faked that she was drunk in her Snapchat. She lied to Victoria, her co-worker, when stating everything was fine. When interviewed by the police, she seemed very confused. When unsure of the address, appeared hesitant. She was afraid to get her friend in trouble. She had access to her cell phone during the assault. According to the 9-1-1 call, she did not want her parents to know what was going on. There were plenty of items to impeach her credibility if she testified at trial. Defendant just missed his opportunity. He opted to go to trial, so he missed his opportunity. The mere fact that the defendant misjudged the strength of the state's case did not render his case complete and valid. The O'Connor case, as I might agree, is the third-biggest case. The eyewitness identification of the victim was not as strong as he originally assumed, and why he would be impeachable. That was not a reason to overturn the guilt of the victim.  I don't see any at this time. Thank you, counsel. Any rebuttal, Ms. Kemp? Yes, ma'am. I think it's telling that counsel focused on the misinformation and did not address the reduction of the causal aspect on which the entire argument is based. I've acknowledged that the misinformation was corrected. That's not the question. The question is whether there's a reasonable probability that, but for the deficiency, Josiah would have been in the courtroom that day pleading guilty. And on this record, we know the answer to that question. Counsel referred to meetings between Josiah and defense counsel. None of the affidavits indicate meetings. Instead, the affidavits indicate hurried discussions in the hallway outside the courtroom, with defense counsel popping into the courtroom, the prosecutor coming out, discussions taking place within earshot of Josiah and his parents. The consultation that Josiah had with his defense counsel was hurried hallway consultations, much like we see in the case of Morial, where there was haze, confusion, and influence. The prosecutor influenced Josiah's decision by telling him, excuse me, by leading him to believe that he had to plead guilty there and then or proceed to trial. The attorney's affidavit states that Mrs. Alford indicated, not verbatim, that there was no negotiated plea offer, that the only offer that was pending was to enter into an open plea on both counts of the bill. Yes, Your Honor. That's it. Nothing had to be done today. I believe the not going to drag complaint back and forth quote comes from ASA Alford's affidavit. Okay. So she acknowledged saying that. And counsel for the state... That doesn't put a time frame on anything. She said she's not going to drag the victim back and forth to court. Does her affidavit support your allegation that she indicated that he had to plead guilty or go to trial, plead guilty that day or go to trial? I think that is the clear meaning of the quote. What's the quote? Maybe we should hear the quote. May I? Sure. Yes. I'm sorry. That quote is from Josiah's affidavit and from his parents' affidavit, Dan and Lisa Porter. So neither the prosecutor nor the defense attorney who are having the discussion represent it that way. I think the omission of that fact... So your answer is that's correct? Yes. Yes. That fact does not appear in the counsel's affidavit. It appears in Josiah's affidavit, Dan Porter, and Lisa Porter's affidavit. So three separate affidavits there. Additionally, the state has been essentially acknowledging that interpretation of ASA Alferin's statements and defending over and over ASA Alferin's statements. Counsel suggested that the defendant, quote, decided to enter a plea based on that representation by ASA Alferin. Of course, he can't make a known decision based on the false information that his options are to plead guilty now or to commit a radical breach of trial, as was suggested by ASA Alferin. Finally, counsel made arguments regarding the outcome of a trial or the likely outcome of a trial had he gone to trial. But we know from Lee that that is not the focus of this inquiry. We directly rejected that line of reasoning and directed this court to look at reasonable probability and causal effective deficiency. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess at this time.